PER CURIAM.
The State appeals an order granting Appellee, Markis Phillip Smith [“Smith”], a new trial after he was convicted of robbery with a firearm. Although there are no findings by the lower court, it is agreed that the motion for new trial was based on a claim of prosecutorial misconduct during closing argument.
Smith was charged by information with one count of robbery with a firearm. A jury trial was held on July 12-13, 2011. The evidence at trial showed that the victim, Desmond Henry, while sitting in his vehicle in front of a hair salon, was robbed at gunpoint by Smith. Smith then fled in a car. Numerous patrons inside the salon observed the robbery. They all positively identified Smith as the robber.
The jury returned a verdict of guilty with a special finding that Smith carried, displayed, used or possessed a firearm in the commission of the robbery. Smith timely filed a motion for new trial and requested that the closing argument be transcribed. His motion alleged that he was denied a fair trial as a result of improper comments by the prosecutor. The motion specifically identified the following:
1. Calling his theory of the defense insane.
2. Suggesting to the jury that his counsel’s comment on the alleged victim’s testimony on the color of the perpetrator’s hat being “black” was false and misleading, when in fact it was an accurate comment.
3. Suggesting to the jury that his sister’s testimony regarding Smith’s gold teeth and tattoos at the time of the offense was fabricated without any evidence of fabrication and with contrary evidence from Smith’s booking photo, which shows gold teeth.
4. Arguing to the jury that his counsel misled the witness Ms. Nelson into saying the photo of Smith in the photo lineup most resembled Smith, when in fact that was the witness’s testimony, which Smith’s counsel merely highlighted during cross-examination.
5. After choosing not to invoke the rule on witness sequestration, the State suggested to the jury that there was some impropriety in his sister’s testimony, since she had remained in the courtroom during the trial.
6. Pointing at Smith repeatedly during closing and stating this is the man who committed the robbery, thereby suggesting some special knowledge or information about the case, apart from the evidence admitted at trial.
Two months later, without conducting a hearing or having the closing argument transcribed, the trial court ordered a new trial for Smith. The trial court also denied the request for a transcript of the trial. The State filed a motion for reconsideration, pointing out the lack of transcripts, the lack of a hearing, the lack of opportunity to be heard and the lack of explanation for the trial court’s ruling. The trial court denied the State’s motion for reconsideration.
*1206 Below, Smith made only one objection during the State’s entire closing argument, and that one came during the rebuttal argument. The following was the objected-to statement made by the prosecutor:
And one of the things that defense keeps pointing out, which I find very interesting, is that he was saying, well, because his height is off, that he clearly can’t be the person who did this. Well, first of all, the only person we heard from about his height is his sister. Now, you guys saw him. He stood before you. So you can make the judgment of how tall he is. But I’d like you to keep in mind the height of the victim. The victim is huge. He’s, like, six-three. He’s a big guy. And what he said is that, yeah, the defendant is smaller than him, that he believed him to be, like, five-six. He wrote in his statement five-six, but he believed — he told the officer that he was between five-six and five-eight. Well, is it so unrealistic that a guy who’s six-three, this big hulk of a man, sees a guy who’s shorter, smaller than him, and says that he’s five-six to five-eight, when he may be five-eight, five-nine, five-ten? I don’t know. We don’t know how tall he is. But you can make that — that determination. Because he presented himself to you. So as far as that being something that makes this reasonable doubt, that’s insane.
Defense counsel objected to characterizing the defense as “insane.” The State rephrased and closing argument continued. Smith’s counsel did not request a curative instruction or move for a mistrial. In our view, this objectionable statement received the appropriate treatment it warranted and would not have supported a mistrial had one been requested. All other instances of alleged prosecutorial misconduct were not objected to at trial. Therefore, to warrant a new trial, the prosecutorial misconduct must rise to the level of fundamental error. See e.g., State v. Mathis, 933 So.2d 29, 32 (Fla. 2d DCA 2006); State v. Delafuente, 487 So.2d 1083 (Fla. 4th DCA 1986). “The test for determining fundamental error is whether the error ‘goes to the foundation of the case or goes to the merits of the cause of action.’ Specifically, prosecutorial misconduct constitutes fundamental error when, but for the misconduct, the jury could not have reached the verdict it did.” Miller v. State, 782 So.2d 426, 432 (Fla. 2d DCA 2001) (quoting Ashford v. State, 274 So.2d 517, 518 (Fla.1973)); Mathis, 933 So.2d at 32.
We agree with the State that its closing argument did not rise to the level of fundamental error. Indeed, most of the complained-of “misconduct” in closing was not objectionable at all. Smith argues, for example:
During her closing, the prosecutor made numerous comments, which suggested special knowledge or invited the jury to consider evidence not presented at trial. With her first words during closing, the prosecutor pointed at the Defendant and stated:
“This man committed an armed robbery on April 18, 2009. It’s that simple. He’s the person who did it.”
The prosecutor further stated: “to believe that this is a case of mistaken identity, you have to ignore the facts of this case.... ” Those comments are a clear statement implying the personal beliefs of the prosecutor.
These are no more than comments on the evidence that the prosecutor was entitled to make. Considering the State’s comments made during its closing argument both individually and collectively, we conclude that any improprieties did not deprive Smith of a fair trial.
*1207 The most serious prosecutorial lapse in this case were comments concerning Smith’s theory of defense, such as: “if that’s the best they got, okay, great”, and the “insane” comment referenced above. Although the prosecutor may have crossed the line by denigrating defense counsel’s theories and argument, the comments did not go to the heart of the case. Accordingly, we reverse the new trial order and remand for entry of a judgment consistent with the jury verdict.
REVERSED and REMANDED.
GRIFFIN, TORPY and JACOBUS, JJ., concur.